IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE APPLICATION OF GRIESS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE APPLICATION OF EUGENE E. GRIESS.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

IN RE APPLICATION OF KEVIN J. RAINFORTH.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

IN RE APPLICATION OF JUDY M. RAINFORTH.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

IN RE APPLICATION OF PATRICIA D. RAINFORTH.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

IN RE APPLICATION OF MATTHEW OMAN.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

IN RE APPLICATION OF LEVI K. OCHSNER.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

IN RE APPLICATION OF ADAM HAYMAN.
WINDSTREAM COMMUNICATIONS, INC., APPELLANT,
V.
NEBRASKA PUBLIC SERVICE COMMISSION ET AL., APPELLEES.

Filed March 10, 2020.   Nos. A-19-599 through A-19-602, A-19-606, A-19-608, and A-19-609.

Appeals from the Public Service Commission. Affirmed.

Blake E. Johnson and Paul A. Lembrick, of Bruning Law Group, for appellant.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellee Nebraska Public Service Commission.

PIRTLE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Windstream Communications, Inc. (Windstream), appeals the decisions of the Nebraska Public Service Commission (PSC) granting the applications of seven residents, currently served by Windstream as their advanced communication provider, to replace Windstream with Hamilton Telephone Company (Hamilton) as their advanced communications provider. Due to their similarity, we consolidated these cases on appeal. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Eugene E. Griess, Kevin J. Rainforth, Judy M. Rainforth, Patricia D. Rainforth, Matthew Oman, Levi K. Ochsner, and Adam Hayman (Applicants) were all parties residing in Windstream's local exchange territory. Each of the Applicants filed applications seeking to change the local exchange territory of Windstream and replace Windstream with Hamilton as their advanced communications provider. The PSC held a hearing on the applications on April 24, 2019. In support of their applications, the Applicants argued that Windstream did not currently provide internet service and that Hamilton had recently installed a fiber optic line with which the Applicants could connect and obtain adequate internet service, and that the Applicants desired to do so. Hamilton agreed that it would provide the requested service to the Applicants at no additional cost to the Applicants.

Windstream acknowledged that it did not provide adequate advanced telecommunications services to the Applicants at the time of the hearing; however, Windstream argued that it intended to provide that service as early as May 2019. Specifically, Brad Hendrick, Windstream's president of operations for five states, including Nebraska, testified that Windstream intended to provide a fixed wireless product to the Applicants by affixing "RADWIN" equipment on 35-foot telephone poles at five locations near Sutton, Hansen, and Harvard, Nebraska. He stated this equipment would provide "line-of-sight" fixed wireless technology which would extend and provide service between four to five miles of each such location. He stated that although the product is predominantly a line-of-sight technology, Windstream's vendor uses a "beamforming" that allows for some deviation from pure line-of-sight. He testified the technology will allow most customers to receive "100 Mbps" download speeds and better than "8 Mbps." Hendrick testified that he

- 2 -

obtained his May service commencement timeframe from discussions with Windstream's engineers.

Hendrick testified that Windstream had been using the fixed wireless product on poles in Iowa obtaining good results. Hendrick testified that, as of May 2019, he believed Windstream would be able to start taking "qualifying customers and taking orders on that date."

Hendrick acknowledged that Windstream had not contacted the Applicants prior to the hearing and that the RADWIN equipment had not been installed nor tested as of the hearing date. Hendrick did not provide the specific locations for the poles and equipment, nor was there any evidence governing whether the wireless towers would work specifically for each Applicant based upon their specific topography and unique locations. He stated that if Windstream could not service a particular customer in the future, it would agree to release them.

Following the hearing, the PSC entered separate orders governing each Applicant. Although portions of the orders differed in relation to testimony provided by the individual Applicants, the PSC granted all of the Applicants' applications finding that "based upon the evidence presented and arguments offered, that the Applicant is not receiving, and will not receive within a reasonable time, advanced telecommunications capability service from Windstream." In granting the applications, the PSC noted, "given the utility and necessity of access to broadband internet in today's world, even short delays may present significant inconveniences and challenges to Nebraska residents."

In support of its decision, the PSC noted the length of the pending applications, the fact that Windstream had not contacted the Applicants about the pending service while suggesting it intended to commence the provision of such services by May 2019, and the lack of specificity in the evidence that the service would work for the Applicants at their respective locations all supported a finding that, "Windstream's testimony that it plans to provide advanced telecommunications service to this Applicant within a reasonable timeframe lacks sufficient credibility at this point." Windstream appeals from these findings and orders.

## ASSIGNMENT OF ERROR

Windstream appeals contending that the PSC erred in determining that the Applicants would not receive reasonable advanced telecommunications capability service within a reasonable time absent a change in Windstream's Sutton Exchange boundary.

## STANDARD OF REVIEW

Under Neb. Rev. Stat. § 75-136(2) (Reissue 2018), an appellate court reviews an order of the PSC de novo on the record. *In re Application No. B-1829*, 293 Neb. 485, 880 N.W.2d 51 (2016); *In re Application No. C-4981*, 27 Neb. App. 773, 936 N.W.2d 365 (2019). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. *In re Application No. B-1829, supra*; *In re Application No. C-4981, supra*.

When an appellate court makes a de novo review, it does not mean that the court ignores the findings of fact made by the agency and the fact that the agency saw and heard the witnesses who appeared at its hearing. *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019); *In re Application No. C-4981, supra*. Where the evidence is in conflict, the appellate court

will consider and may give weight to the fact that the agency hearing examiner observed the witnesses and accepted one version of the facts rather than another. *In re Application No. C-4981, supra*.

ANALYSIS

These applications involve the Applicants' collective requests to obtain advanced telecommunications services from a telecommunications company serving a "local exchange area" adjacent to the local exchange area in which the Applicants reside. The process stems from legislative authority originally codified in 1969 at Neb. Rev. Stat. § 75-612 to § 75-615 (Cum. Supp. 1969) which allowed telephone users to petition the PSC for a change in telephone service and to adjust boundaries of exchange service areas. The original purpose of the 1969 law was outlined by the Nebraska Supreme Court in *Hartman v. Glenwood Tel. Membership Corp.*, 197 Neb. 359, 362, 249 N.W.2d 468, 471 (1977), where the court explained:

> The statutes involved in this appeal, and under which the application was filed, were enacted in 1969 as L.B. 906. The reason for the enactment of the statute was made clear by Senator Rick Budd, Chairman of the Committee on Public Works, in the statement of intent for L.B. 906, where he states: 'Under the present law, a telephone user is not able to petition the State Railway Commission for telephone service of another exchange or for service of any exchange if he is not within any telephone company's territory. The Nebraska Supreme Court has held that petitions of this kind under the present exchange territorial law may be made by telephone companies only. The telephone user, therefore, cannot have a 'day in court' and cannot have regulatory relief no matter what the merits of his situation will be. LB 906 will permit all telephone users, whether individuals, partnerships, corporations, or others, and whether they use residence service or business service to petition the Commission for a change of telephone service and to have hearings on their cases.

In 2012, the Nebraska Legislature amended these statutes to expand the phrase "exchange telephone services" to "advanced telecommunications capability service" which the Legislature newly defined as "high-speed, broadband telecommunications capability provided by a local exchange carrier that enables users to originate and receive high quality voice, data, graphics, and video communications using any technology." Neb. Rev. Stat. § 86-103.01 (Cum. Supp. 2012).

The entire statutory construct was transferred, as amended, to Neb. Rev. Stat. §§ 86-135 to 86-138 (Cum. Supp. 2018). Following its amendment, § 86-135(1) provided: "Any person may file an application with the commission to obtain advanced telecommunications capability service furnished by a telecommunications company in the local exchange area adjacent to the local exchange area in which the applicant resides."

Once an application is filed, if the affected telecommunications companies do not consent to the application, the PSC serves the affected telecommunications companies with a notice of hearing. See § 86-135(2) (Reissue 2014). The statute then sets forth the PSC's authority to grant the application in providing, in relevant part to this appeal:

Upon the completion of the hearing on such an application made pursuant to section 86-135, if a hearing is required, [PSC] may grant the application, in whole or in part, if the evidence establishes the following:

(1) That such applicant is not receiving, and will not within a reasonable time receive, reasonable advanced telecommunications capability service from the telecommunications company which furnishes telecommunications service in the local exchange area in which the applicant resides;

§ 86-136 (Reissue 2014).

We note that § 86-136(1) was recently amended effective September 1, 2019, to provide that the PSC may grant an application if an applicant is not receiving advanced telecommunications service at the time of the application while dropping the requirement of showing the applicant will not receive the service within a reasonable period of time. See Neb. Rev. Stat. § 86-136 (Cum. Supp. 2019). Because this amendment was not in effect at the time the PSC acted on the Applicants' applications, all discussion herein relates to the prior version of the statute.

Windstream simply argues that the PSC erred in determining the Applicants would not receive reasonable advanced telecommunications capability service within a reasonable period of time. In furtherance of their assignment, Windstream points to the testimony of Hendrick who stated that as soon as May 6, 2019, Windstream intended to provide a fixed wireless product to the Applicants by affixing RADWIN equipment on 35-foot posts at sites near Sutton, Hansen, and Harvard and that the equipment should provide adequate advanced telecommunications service to the Applicants.

In determining whether the evidence supports Windstream's claim that it presented sufficient evidence that it would provide the Applicants advanced telecommunications service within a reasonable period of time, we first note our recent statement in *In re Application No. C-4981*, 27 Neb. App. 773, 936 N.W.2d 365 (2019), governing the same subject matter. Therein, we held:

While the legislative materials for L.B. 715 do not provide insight about the phrase "within a reasonable time" under § 86-136(1), the phrase remaining intact shows that, at least at that time, the Legislature preferred to leave the matter to the PSC's discretion to analyze on a case-by-case basis. See, also, *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019) (even under de novo standard of review, it is appropriate to adhere to common practice among appellate courts to afford appropriate deference to findings of agency before which record was created). In its order in the present case, the PSC stated, "given the utility and necessity of access to broadband internet in today's world, even short delays may present significant inconveniences and challenges to Nebraska residents." The PSC related that the length of time it would consider to be reasonable within the context of §§ 86-135 to 86-138 was "relatively short" and "certainly shorter than the nearly eight months [Toben's] docket [had] been pending."

*In re Application No. C-4981*, 27 Neb. App. at 785-86, 936 N.W.2d at 374.

We next note that Windstream does not dispute that, as to all Applicants, at the time of the applications and April 24, 2019, hearing, Windstream was not providing reasonable advanced telecommunications service to the Applicants. As such, the sole issue in this case was whether Windstream provided sufficient evidence that it would provide reasonable advanced telecommunications capability service to Applicants' residences within a reasonable period of time. As the Nebraska Supreme Court held in *Waste Connections of Neb. v. City of Lincoln*, 269 Neb. 855, 697 N.W.2d 256 (2005), as an advocate for the affirmative issue to be proved, the burden of proof rested with Windstream to make this showing.

Here, the evidence governing the advanced telecommunications service and time to provide that service was provided solely by Hedrick. In doing so, Hedrick described that the service to be provided was a fixed, wireless product which would provide "line-of-sight" technology to customers within 4 to 5 miles of the equipment, which equipment would be affixed on 35-foot poles. Although the technology was "line-of-sight," Hedrick described it included some "beamforming" which allows for some deviation from line-of-sight. Hedrick went on to describe the speed at which the technology is designed to work within the 4- to 5-mile radius and that Windstream had achieved levels of success with the product in Iowa. Hedrick stated that in discussing the matter with company engineers, Windstream intended to commence offering the service at five sites located near Hansen, Sutton, and Harvard, by May 6, 2019.

Notwithstanding Hedrick's general recitations of the product and its capability, he never offered any specific evidence of the locations of the wireless product or whether Windstream had any impediments left which could hinder or delay providing their technology at those locations. Hedrick readily admitted the equipment was not currently in place and had not been tested. Accordingly, assuming that the specific locations for the technology were available for installing the technology, and assuming Windstream could arrange for its contractors to install the technology without delays (neither of which conclusion is supported by the record), there was no evidence in the record to establish that the technology would work for the specific Applicants at their residences. By not providing greater specifics about where the technology would be located and when, by not having tested the equipment, and specifically by not showing that this line-of-sight technology, when eventually installed, would work for these specific Applicants in relation to their individual topography and locations, the PSC held that Hedrick's proposed May 2019 commencement date was lacking in credibility. We have held that when conducting de novo review, this court may consider the fact that an agency, sitting as the trier of fact, saw and heard the witnesses and observed their demeanors while testifying and may give weight to the agency's judgment of credibility. See *Abay, L.L.C. v. Nebraska Liquor Control Comm.*, 303 Neb. 214, 927 N.W.2d 780 (2019). After reviewing the record here, and in giving some weight to the PSC's determination of credibility, we cannot say that the PSC erred in finding Windstream failed to meet its burden to show it would provide advanced telecommunications service within a reasonable period of time to these specific Applicants.

In so finding, we note that even though each Applicant testified and spoke about their specific location and topography and need for advanced telecommunications service, the overall issue remained the same as to all such Applicants. That is, in order to avoid losing these customers based upon previously failing to provide them with advanced telecommunications service, Windstream bore the burden to show it would provide the Applicants with that service within a

reasonable period of time. The Applicants' applications varied as to the time each was filed, but each application was filed long before the April 24, 2019, hearing date and Windstream had admittedly not provided that service as of the hearing date, nor communicated with any of the Applicants about Windstream's intent to service the Applicants prior to the hearing.

As to Windstream's broad, unsupported statement at the hearing that it intended to commence offering the service in the area by May 6, 2019, the record is simply devoid of any specific evidence which would suggest that is even a realistic possibility. When confronted with an application under these circumstances, it is incumbent upon the telecommunications company to present legally sufficient evidence of which the trier of fact, in this case the PSC, could conclude that the customer was likely to receive the requisite service within a reasonable period of time. Windstream's nonspecific evidence did not provide that level of sufficiency here and, after reviewing the record, we hold the PSC did not err in finding that Windstream's representations made at the hearing were lacking in credibility.

## CONCLUSION

Under our de novo review, we affirm the PSC's orders granting the Applicants' applications to replace Windstream with Hamilton as their advanced telecommunications provider.

AFFIRMED.